38 So.2d 609

### WALTER v. STATE.
### 6 Div. 718.

Court of Appeals of Alabama.
Jan. 11, 1949.

Rehearing Granted Feb. 1, 1949.

J. Robt. Huie, of Birmingham, for appellant.

A. A. Carmichael, Atty. Gen., and Thos. F. Parker, Asst. Atty. Gen., for the State.

Murray & Murray, of Birmingham, amicus curiae.

CARR, Judge.

The appellant was convicted in the court below for violating the provisions of Sections 8 and 9 of what is commonly referred to as the "Bradford Act." Act No. 298, General Acts 1943, p. 252, Title 26, Sections 383 and 384, Cum. Pocket Part, Code 1940. They are:

"Section 383. Every person shall be free to join or to refrain from joining any labor organization except as otherwise provided in section 391 of this title, and in the exercise of such freedom shall be free from interference by force, coercion or intimidation, or by threats of force or coercion,

**270**

or by intimidation of or injury to his family."

"Section 384. It shall be unlawful for any person by the use of force or violence, or the threat of the use of force or violence, to prevent or to attempt to prevent any person from engaging in any lawful vocation within this state."

■ Without the citation of any authorities, appellant's counsel in brief states that the above sections are unconstitutional.

It appears to us that the Supreme Court, in Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 18 So.2d 810, has in effect determined this question contrary to the position of the appellant. See also, Alabama State Federation of Labor v. Lusk, 246 Ala. 32, 18 So.2d 833.

■ In the case of Hotel & Restaurant Employees v. Greenwood, 249 Ala. 265, 30 So.2d 696, 705, the Supreme Court expressed the view and held that a closed shop is not outlawed in Alabama. In reply to a contention that Sections 383 and 384, supra, had this effective result, the court observed:

"Manifestly these sections only denounce the imposition of restraint on one regarding his attitude toward affiliation with a labor organization by force, coercion, intimidation or by threats thereof, or by intimidation of or injury to his family. Their essence is not to ban a closed shop but to make unlawful interference, by the stated methods, with a person's freedom of choice in regard to such affiliation.

"Nor do we think that §§ 57 and 103 of Title 14 and the aforesaid sections of the Bradford Act can be read together so as to ban the closed shop. All the provisions speak of the use of force, threats or intimidation ' or other improper or unlawful means and do not prohibit a requirement of union membership as a condition of employment so long as such means are not utilized to enforce the stipulation."

Clearly we have here an expression from the court of the meaning and purport of the terms of the sections of the act. Their constitutionality vel non must be determined in consonance with this interpretation.

The sections of instant concern were not specifically treated or analyzed in the McAdory case, supra [246 Ala. 1, 18 So.2d 823], but there can be no doubt or question that the validity of each must be upheld on the basis of the authority of this able opinion. As one illustration of this view we quote: "If we follow the argument of counsel for plaintiff to its ultimate conclusion, it is difficult to see where any effective legislation could be had concerning regulations of organizations of this character. We think the authorities which we have herein cited clearly demonstrate that they are subject to the police power of the state, and that the contention as to the violation of the constitutional provisions of free speech and assembly invalidates *any of the provisions* of the Act, is untenable." (Emphasis ours.)

■ This disposes of the only question upon which insistence is made in appellant's brief. In deference to the record, however, we will respond to one other matter.

It appears that the Fourth Regional War Labor Board requested or directed that the employee be suspended for five days a week for four weeks and then be discharged if he had not paid his labor union dues. The accused followed these instructions, and the employee was discharged as a result of his failure to make said payment.

It is clear to us that the Labor Board could act only in an advisory or recommendatory capacity and it was without power or authority as a tribunal to defeat or obstruct the provisions and mandates of the penal statute. This seems to be the effect of the holdings in the following cases. Masso et al. v. Burke et al., 138 N.J.Eq. 276, 47 A.2d 732; In re Suburban Bus Co., Inc., 65 F.Supp. 389; Baltimore Trans't Co. v. Flynn et al., 50 F.Supp. 382; May Dept. Stores Co. v. Brown et al., 60 F.Supp. 735.

The judgment of the court below is ordered affirmed.

Affirmed.

### On Rehearing.

We are not disposed to charge our omissions or oversights to the fault of

others, but an explanation here is appropriate.

When this appeal was first reviewed we observed that the appellant made only one claim as a defense in the court below. This is evinced by the following statement of his counsel: "Of course, Mr. Satterwhite's objection goes to the merits of this case. Our defense in this case, as the court probably has gathered, this man was discharged pursuant to order of the Fourth Regional War Labor Board sitting in Atlanta who issued instructions to the company on the request of the Union that this man be suspended five days a week for four weeks and then discharged if he didn't pay his dues, that instruction being based on the order of the War Labor Board extending the contract between the company and the union which governed the terms of employment of Mr. Jenkins. I submit, unless that is a defense, as Mr. Satterwhite says, we have no defense."

On appeal appellant's attorney apparently abandoned this contention. In brief he insisted only that the sections in the act in question are unconstitutional. We responded to this position. In deference to the fact that the record indicated the other insistence, we deemed it appropriate to make response to it also.

After the original opinion was published it came to our attention that our conclusions occasioned some confusion and uncertainty. Of our own motion, we ordered the cause placed on the rehearing docket. The views we now express will be taken as an extension of our original opinion.

The cause below was submitted on an agreed statement of facts, which statement consists of oral testimony of Mr. Jenkins, the employee in question, and that of the appellant; also exhibits, among which are interim directive orders of the Regional War Labor Board, opinions of the Board, and some correspondence; all of which was tendered in the trial where the prosecution had its original inception.

On April 12, 1943, the Ingalls Iron Works Company (which we will herein denote as the Company) and the International Association of Bridge, Structural and Ornamental Iron Workers, Shopmen's Local Number 539, A. F. of L. (which we herein denote as the Union) entered into a collective bargaining agreement. A copy of the contract is not included in the agreed statement of facts. It fairly appears from the evidence, however, that the agreement was to extend for a period of one year from the date of its execution. It is apparent also that the Company and the Union became involved in a controversy over the terms of a proposed renewal contract. This dispute was certified to the National War Labor Board.

On April 21, 1944, the Regional War Labor Board for the Fourth Region, acting as the duly authorized agent of the National War Labor Board, issued an interim directive order which in part contained the following: "The contract between the parties dated April 12, 1943, shall remain in full force and effect until such time as the Regional War Labor Board shall be able to determine finally the issues in this case, or until such time as the parties may mutually agree. If any wage increases are ordered by the Board the increases shall be retroactive to April 12, 1944, the date this case was certified by the Secretary of Labor."

The defendant was a superintendent of one of the Company's plants. Mr. Jenkins entered the employment of the Company on June 19, 1943. At the time he was a member of the Union. He paid his dues incident to his membership up to April 12, 1944. On July 25, 1944, he received a letter, dated the day prior, from the appellant. The letter contained the following paragraph: "Therefore, in compliance with the above stated demand of the Union and pursuant to the aforementioned Orders of the Board, you are hereby suspended from employment for a period of five (5) consecutive days beginning Wednesday, July 26, 1944. You will be at liberty to return to work on Monday, July 31, 1944, but if then you still have not paid up your dues you will be subject to further suspension as required by the Board's Orders aforementioned."

Mr. Jenkins left the employment of the Company on July 27, 1944.

■ A maintenance of membership clause in a contract is understood to mean that all employees who are members of the union at a specified time after the contract is executed and all who later join the union must, as a condition of employment, remain as members in good standing for the duration of the agreement between the employer and the union.

■ We entertain the view and hold that Mr. Jenkins was bound by the terms of the agreement between the Union and the Company. If the contract contained a maintenance of membership clause, Mr. Jenkins was obligated to retain his Union membership standing by the payment of the required dues.

■ The Company, of course, was also bound by 'the terms of the contract.

It appears reasonably certain that Mr. Jenkins was discharged solely because his membership in the Union had terminated. If the contract contained the indicated clause and if Mr. Jenkins' discharge occurred during the effective life thereof, the appellant could not be charged with a violation of the law in question.

This conclusion follows logically from the holding in the Greenwood case, supra.

In the case at bar the evidence does not make it certain that the contract between the Company and the Union had in every respect terminated at the time Mr. Jenkins was discharged. In fact, there are evincing indications that by mutual consent it had not.

In any event, in consonance with the extent of proof which is required in all criminal prosecutions, we hold that the evidence in the instant case is not sufficient to meet these legal demands.

It is therefore ordered that the application for rehearing be and the same is hereby granted, our judgment of affirmance set aside, and the judgment of the court below be reversed and the cause remanded.

Application for rehearing granted.

Reversed and remanded.